## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 25 2019, 8:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven J. Halbert
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Erik J. Bryant
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of The Involuntary Termination of Parent-Child Relationship of:

J.G. and J.B. (Minor Children)

and

B.B. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner,*

February 25, 2019

Court of Appeals Case No.
18A-JT-2157

Appeal from the Marion Superior Court Juvenile Division

The Honorable Marilyn Moores, Judge

The Honorable Larry Bradley, Magistrate

Trial Court Cause Nos.
49D09-1802-JT-167, 49D09-1802-JT-168

Child Advocates, Inc.

*Guardian ad Litem.*

**Altice, Judge.**

## Case Summary

B.B. (Mother) appeals the termination of her parental rights to her two minor children, J.G. and J.B. (collectively, the Children). She contends that the trial court misapplied the termination statute when it considered the conditions relating to the continued removal of the Children from her care rather than just the initial reason for removal. Mother also argues that there was insufficient evidence that continuing the parent-child relationship posed a threat to the well-being of the Children.

We affirm.[1]

## Facts & Procedural History

---

[1] J.B.'s father is unknown. J.G.'s father's parental rights were terminated, but he does not participate in this appeal from the termination order. Accordingly, we will focus on the facts related to Mother.

[3]   The Indiana Department of Child Services (DCS) became involved with the family shortly after Mother gave birth to J.B. on September 5, 2016. J.G., Mother's older son, had been born on November 25, 2014. DCS filed a child in need of services (CHINS) petition on September 15, 2016, alleging that Mother had failed to provide the Children with a safe and appropriate living environment free from substance abuse. Specifically, DCS alleged that Mother tested positive for marijuana and opiates at the time of J.B.'s birth, which she admitted using during her pregnancy without a prescription, and that J.B. was admitted to the NICU with signs of respiratory distress and poor feeding.

[4]   At the initial CHINS hearing on September 19, 2016, the trial court accepted DCS's recommendations and ordered that the Children remain in Mother's care "conditioned upon [Mother's] participation in a substance abuse assessment, random drug screens, home-based therapy, [and other services]." *Exhibits*, Petitioner's Exhibit 3.

[5]   Mother did not appear for a pre-trial hearing on December 9, 2016, or at the scheduled fact-finding hearing on January 13, 2017. Mother's counsel informed the trial court at the January hearing that Mother was incarcerated for a probation violation. In light of Mother's incarceration, DCS requested removal of the Children from her care. The court so ordered, and the Children were placed in the care of relatives, where they remain to this day. The court rescheduled the fact-finding hearing, which was again rescheduled due to Mother's continued incarceration. She was released in mid-February.

[6] At the fact-finding hearing on February 24, 2017, Mother appeared with counsel and entered into the following admission: "Mother has substance abuse issues that the coercive intervention of the court is needed to assist with." *Exhibits*, Petitioner's Exhibit 8. Based on Mother's admission, the trial court adjudicated the Children CHINS and found that it was in their best interests to continue in relative placement.

[7] On March 24, 2017, the court issued a dispositional order and a parental participation order. Specifically, the court ordered Mother to participate in and follow all recommendations of home-based therapy and home-based case management, to complete a substance abuse assessment and follow all treatment recommendations, and to submit to random drug screens.

[8] The court changed Mother's parenting time from unsupervised to supervised on June 19, 2017. That same month, Mother did not appear for a periodic review hearing. At the conclusion of the hearing, the court determined that "[t]he circumstances which caused the children's removal have not been alleviated" and that the "services offered and available have not been effective or completed". *Exhibits*, Petitioner's Exhibit 12. The permanency plan continued to be reunification with Mother.

[9]     Following a permanency hearing on January 8, 2018, which Mother did not attend because she was incarcerated,[2] the trial court changed the permanency plan to adoption. In this regard, the court noted that the Children were adjudicated CHINS based on Mother's illegal use of drugs, Mother had been "unsuccessfully discharged from all services", and her whereabouts were unknown. *Exhibits*, Petitioner's Exhibit 14.

[10]    On February 12, 2018, DCS filed petitions to terminate Mother's parental rights to J.G. and J.B. The termination fact-finding hearing was held on July 16 and 30, 2018. Mother attended only the first day of the hearing. Service providers consistently testified regarding Mother's lack of participation in services, her frequent cancellations and no-shows, and her general lack of progress. All of Mother's services had been cancelled due to noncompliance. In fact, Mother told her home-based caseworker that she was done with services and was going to allow the Children to be adopted. Additionally, Mother never took advantage of recommended intensive out-patient treatment for substance abuse and last took a random drug screen on October 18, 2017.[3] At the time of the final hearing, Mother did not have a home or a job, and her sobriety was

---

[2] It appears that Mother was incarcerated – for a second time during the CHINS proceedings – from approximately October 2017 to February 2018.

[3] Mother had a period of compliance between February and April 2016 and then participated in some screens in October 2017, but she was a no-show for the vast majority of her random drug screens.

unproven. She also had a new criminal drug charge that was filed against her on March 26, 2018.

[11] Both the family case manager and the Guardian ad Litem opined at the hearing that termination was in the Children's best interests. The Children had been in the same placement, with their maternal grandparents, since their removal from Mother's care in January 2017. This was a pre-adoptive home in which the Children were doing very well.

[12] On August 10, 2018, the trial court ordered the termination of the parent-child relationship between Mother and the Children. In its order, the trial court made the following relevant factual findings, none of which are challenged on appeal by Mother:

> 9. Case management was in effect for [Mother] between Spring of 2017, until it closed unsuccessfully in May of 2018. Goals were to obtain housing and employment, to create a budget, and work on parenting skills.
>
> 10. [Mother] has lacked stable independent housing, having lived with relatives or a boyfriend, and having moved several times. Included in her unstable housing are periods of incarceration.
>
> 11. As of July 20, 2018, [Mother] was homeless.
>
> 12. [Mother] failed to obtain employment and therefore a budget could not be worked on. One job was lined up but [Mother] became incarcerated and unavailable.

13. [Mother] was very inconsistent in attending case management sessions, eventually stopping. Due to a lack of taking responsibility, and always crying, she failed to get a lot done in her case management.

14. [Mother's] case manager had concerns regarding [her] parenting role and discipline ideals.

15. [Mother] last saw the children during the spring of 2018. Although she was to have three parenting time sessions per week, she cancelled several sessions and failed to appear at several sessions. Eventually, she stopped visits and the parenting time referral closed in May of 2018 due to [her] noncompliance.

16. [Mother] was appropriate in the supervised visits. She appeared bonded with her children and interacted with them well.

17. Although outpatient substance abuse treatment was referred more than once, there is no evidence that [Mother] ever completed treatment. She currently has a Possession of a Controlled Substance charge pending in Johnson County.

18. [Mother] has not submitted to a random drug screen through Redwood Toxicology since October of 2017.

19. On January 8, 2018, the children's plan for permanency change from reunification to adoption with the Court finding relevant to [Mother], in-part, that DCS filed a CHINS Petition alleging the children were in need of services due to mother using methamphetamine, heroin, and opiates, and parents have been unsuccessfully discharged from all services and their whereabouts are unknown.

20. [Mother] has not demonstrated any progress made since the change of the children's permanency plan.

*Appellant's Appendix* at 63-64.

[13] Based on its findings of fact, the trial court concluded by clear and convincing evidence:

> There is a reasonable probability that the conditions that resulted in the children's removal and continued placement outside the home will not be remedied by their mother who has demonstrated she is unable or unwilling to make the effort needed to overcome substance abuse and instability to be an appropriate parent.

*Id*. at 64. Additionally, the court concluded there was a reasonable probability that continuation of the parent-child relationship posed a threat to the Children's well-being because "it would pose as a barrier to obtaining permanency for them through an adoption when respondent parents have stated they are done with services and would let the children be adopted." *Id*. Finally, the court made relevant findings and concluded that termination of the parent-child relationship was in the best interests of the Children and that a satisfactory plan for their future care and treatment existed (that is, adoption). Mother now appeals.

## Discussion & Decision

[14] When reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *In re R.S.*, 56 N.E.3d 625, 628

(Ind. 2016). Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied.* In deference to the trial court's unique position to assess the evidence, we will set aside its judgment terminating a parent-child relationship only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[15] We recognize that the traditional right of parents to "establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.,* 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. Although parental rights are of constitutional dimension, the law provides for the termination of these rights when parents are unable or unwilling to meet their parental responsibilities. *In re R.H.*, 892 N.E.2d 144, 149 (Ind. Ct. App. 2008). In addition, a court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding the termination. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). The purpose of terminating parental rights is not to punish the parents, but to protect their children. *Id*.

[16] Before an involuntary termination of parental rights may occur in Indiana, DCS is required to allege and prove by clear and convincing evidence, among other things:

> (B) that one (1) of the following is true:

> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services[.]

Ind. Code § 31-35-2-4(b)(2)(B). DCS must also prove by clear and convincing evidence that termination is in the best interests of the child and that there is a satisfactory plan for the care and treatment of the child. I.C. § 31-35-2-4(b)(2)(C), (D).

[17] On appeal, Mother challenges only the trial court's determinations relating to I.C. § 31-35-2-4(b)(2)(B)(i) and (ii). Because DCS was required to establish just one of these alternative requirements by clear and convincing evidence, we focus our review on subsection (b)(2)(B)(i) and the trial court's following conclusion:

> There is a reasonable probability that the conditions that resulted in the children's removal and continued placement outside the home will not be remedied by their mother who has demonstrated she is unable or unwilling to make the effort needed to overcome substance abuse and instability to be an appropriate parent.

*Appellant's Appendix* at 64.

[18] Mother's argument is that the trial court was limited by statute and case law to considering only the condition that led to the removal of the Children from her care (that is, her incarceration). In other words, she contends that the trial court was precluded from considering conditions related to the continued placement of the Children outside her home after her release from incarceration (that is, her substance abuse and related instability). Mother asserts that the trial court's "distortion of the statute renders the termination process to be a foregone conclusion and violates the parent's due process right to receive a fundamentally fair hearing." *Appellant's Brief* at 8.

[19] We find Mother's argument perplexing, as it is well established that an analysis under I.C. § 31-35-2-4(b)(2)(B)(i) first requires us to "ascertain what conditions led to the [Children's] placement *and retention* in foster care." *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1231 (Ind. 2013) (emphasis supplied); *see also In re D.K.*, 968 N.E.2d 792, 798 (Ind. Ct. App. 2012) ("a court may consider not only the basis for a child's initial removal from the parent's care, but also any reasons for a child's continued placement away from the parent"); *In re A.I.*, 825 N.E.2d 798, 806 (Ind. Ct. App. 2005) ("it is not just the basis for the initial removal of the child that may be considered for purposes of determining whether a parent's rights should be terminated, but also those bases resulting in the continued placement outside of the home"), *trans. denied*.

[20] Here, the record makes clear that DCS became involved with the family due to Mother's substance abuse. The Children were initially allowed to stay in Mother's care, while she engaged in services, but were removed when she

became incarcerated four months into the CHINS proceedings. Upon Mother's release from jail about a month later, the Children were not returned to her care. Rather, on February 24, 2017, the Children were adjudicated CHINS based on Mother's admission that she had substance abuse issues and needed assistance through the coercive intervention of the court, and the trial court ordered the continued placement of the Children in relative care.

[21] The trial court's dispositional order, issued in March 2017, focused on services related to Mother's substance abuse issues and related instability. Specifically, Mother was ordered to participate in and follow all recommendations of home-based therapy and home-based case management, to a complete substance abuse assessment and follow all treatment recommendations, and to submit to random drug screens. Following subsequent CHINS hearings, the court consistently concluded that the circumstances that caused the Children's removal had not been alleviated and ordered that the Children remain in relative placement. When the trial court changed the plan to adoption in January 2018, the court noted that the basis of the CHINS adjudication was Mother's illegal use of drugs and that Mother had since been unsuccessfully discharged from all services and her whereabouts were unknown. In fact, Mother was incarcerated again.

[22] The trial court properly considered the conditions that led to the CHINS adjudications and the Children's continued placement outside of Mother's care. Mother's substance abuse and instability arising therefrom were the focus of the underlying CHINS proceedings. The evidence clearly and convincingly

establishes that Mother was either unable or unwilling to make the effort needed to overcome these issues. At the time of the termination hearing, Mother had not participated in a random drug screen for eight months, had a new criminal drug charge, had been unsuccessfully discharged from all services, and was homeless and unemployed. She did not even show up for the final day of the termination hearing.

[23] The evidence amply supports the court's determination by clear and convincing evidence that there is a reasonable probability that the conditions resulting in the Children's removal or continued placement outside Mother's home will not be remedied. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001) (court should judge a parent's fitness to care for her children at the time of the termination hearing, taking into consideration evidence of changed conditions, habitual patterns of conduct, and the parent's response to services offered by DCS), *trans. denied*.

[24] Having upheld the trial court's determination regarding the probability of remedying the conditions resulting in the Children's placement outside Mother's home, we need not address her argument concerning the alternative basis for termination – that continuation of the parent-child relationship posed a threat to the well-being of the Children. Further, Mother does not challenge the trial court's determinations with respect to the other statutory requirements for termination. Accordingly, we affirm the termination of the parent-child relationship between Mother and the Children.

Judgment affirmed.

Najam, J. and Pyle, J., concur.